**Robert L. POWELL, Jr.**

v.

**BLALOCK PLUMBING AND ELECTRIC and HVAC, Inc., et al.**

Supreme Court of Tennessee, Special Workers' Compensation Appeals Panel.

July 12, 2002.

Adolpho A. Birch, J., filed opinion concurring in result only in part and dissenting in part.

William M. Barker, J., filed dissenting opinion.

David Brett Burrow and Gordon C. Aulgur, Nashville, Tennessee, and Delicia R. Bryant, Knoxville, Tennessee, for the appellants, Blalock Plumbing Electric & HVAC, Inc. and Federated Insurance Company.

Clinton W. Swafford, John Robert Colvin, and Michael D. "Mickey" Hall, Winchester, Tennessee, for the appellee, Robert C. Powell.

## OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, J, and PATRICIA J. COTTRELL, Sp.J., joined.

The sole issue in this workers' compensation appeal is whether Tenn.Code Ann. § 50–6–241(a)(1) applies to limit the claimant's award of permanent partial disability to two and one-half times the medical impairment rating of 10% to the body as a whole. The trial court determined that the claimant had not made a meaningful return to work and awarded the claimant four times the medical impairment rating, or 40% to the body as a whole. The Special Workers' Compensation Appeals Panel agreed with the trial court's ruling. We granted full court review of this case. After careful consideration, we affirm the trial court's judgment.

Robert C. Powell, an employee of Blalock Plumbing, Electric & HVAC, Inc. ("Blalock"), injured his back on September 13, 1999, when he fell off a ladder while pulling wire. Dr. Michael Moran performed surgery to repair a herniated disk. Powell returned to work on May 15, 2000, and was released from Dr. Moran's care in July 2000. Dr. Moran assessed a permanent partial impairment of 10% to the body as a whole.

Powell has a ninth grade education and no additional vocational training. At the time of trial he was thirty-eight years of age. Before his injury he was earning $14.00 per hour as a "working foreman." He worked a forty-hour work week and occasional overtime. His job duties required that he occasionally lift up to 200 pounds from floor to waist, frequently lift 45 pounds from floor to overhead, and frequently carry approximately 40 to 80 pounds a distance of 100 yards. In addition, his job required sustained bending, repetitive squatting, and frequent standing, sitting, walking, pushing, and pulling. Powell returned to work on May 15, 2000, as a working foreman at his pre-injury hourly rate. Initially, he worked two to three days a week. At the time of trial, he was working thirty-two hours, or four days, per week. Powell testified that his job duties remain the same, but he is unable to do as much as he was able to do prior to the injury. He cannot lift heavy objects or pull wire and can only perform the minor, smaller tasks. Powell testified that he has difficulty bending, stooping, twisting, standing for long periods of time, and walking long distances. He also continues to experience back pain on a daily basis and a burning sensation in his left foot that increases as the day progresses. Powell testified that on some days he has to take prescription pain medication to "tough it out" and finish his day's work. On other days the pain prevents him from working at all.

Although Powell continued to earn the same hourly wage after his injury, the trial court held that Powell did not have a meaningful return to work. Accordingly, the trial court declined to limit the employee's award to two and one-half times the medical impairment rating. The trial court awarded Powell four times the medical impairment rating, or 40% permanent partial disability benefits to the body as a

whole. Blalock appealed, and the appeal was referred to the Special Workers' Compensation Appeals Panel pursuant to Tenn. Code Ann. § 50–6–225(e)(3). The Panel agreed with the trial court's ruling. We granted Blalock's petition for full Court review pursuant to Tenn.Code Ann. § 50–6–225(e)(5).

## ANALYSIS

■ In determining vocational disability, a court is required to consider "all pertinent factors, including lay and expert testimony, employee's age, education, skills and training, local job opportunities, and capacity to work at types of employment available in claimant's disabled condition." Tenn.Code Ann. § 50–6–241(a)(1). An injured employee who is eligible to receive permanent partial disability benefits may receive a maximum of two and one-half times the medical impairment rating when the pre-injury employer "returns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of the injury." Id.[1] We have held that the employee's return to work must be "meaningful." To determine whether there was a meaningful return to work, we must focus on the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work. Nelson v. Wal–Mart Stores, Inc., 8 S.W.3d 625, 630 (Tenn. 1999); Newton v. Scott Health Care Ctr., 914 S.W.2d 884, 886 (Tenn.Workers Comp.Panel 1995). When there has been no meaningful return to work, the workers' compensation award is governed by Tenn.Code Ann. § 50–6–241(b),[2] and the employee may be awarded up to six times the medical impairment rating.

When Powell returned to Blalock, he was paid at the same hourly rate, $14.00 per hour. At the time of trial, he was working four days, or 32 hours, per week. We must therefore determine 1) whether Blalock returned Powell to employment at "a wage equal to or greater than the wage" Powell was receiving at the time of his injury, and 2) whether Powell's return to work was a meaningful one.

Blalock insists that Powell was returned to work at "a wage equal to or greater than the wage" Powell was receiving at the time of the injury because Powell was receiving $14.00 per hour prior to the injury and was returned to work at the same rate of pay. The term "wage" is undefined in the worker's compensation statute. See Tenn.Code Ann. § 50–6–102. In Wilkins v. The Kellogg Co., 48 S.W.3d 148 (Tenn. 2001), this Court considered the meaning of the term "wage" in construing the temporary partial disability statute, Tenn. Code Ann. § 50–6–207(2) (requiring payments equal to a percentage of "the difference between the 'wage of the worker at the time of injury and the wage such worker is able to earn in such worker's partially disabled condition."). We held in Wilkins that the terms "wage" and "average weekly wage" are not synonymous. Wilkins, 48

---

1. "[W]here an injured employee is eligible to receive any permanent partial disability benefits, ... and the pre-injury employer returns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of injury, the maximum permanent partial disability award that the employee may receive is two and one-half (21/2) times the medical impairment rating...." Tenn.Code Ann. § 50–6–241(a)(1).

2. "[W]here an injured employee is eligible to receive permanent partial disability benefits, ... and the pre-injury employer does not return the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of injury, the maximum permanent partial disability award that the employee may receive is six (6) times the medical impairment rating...."

S.W.3d at 152–53. Average weekly wage is defined as "the earnings of the injured employee in the employment in which the injured employee was working at the time of the injury during the period of fifty-two (52) weeks immediately preceding the date of the injury divided by fifty-two (52)...." Tenn.Code Ann. § 50–6–102(2)(A). It includes amounts such as overtime, bonuses, and commissions in addition to the employee's regular pay. *Wilkins,* 48 S.W.3d at 153; *see also P & L Const. Co. v. Lankford,* 559 S.W.2d 793, 795 (Tenn.1978).

▪ In contrast to the term "average weekly wage," however, the legislature used the term "wage" in determining the amount of temporary partial disability benefits available to an injured employee. Tenn.Code Ann. § 50–6–207(2); *see also Wilkins,* 48 S.W.3d at 152. When the legislature uses specific language in one section of a statute but omits that language in another section of the same act, we must presume that the legislature acted purposefully in including or excluding that particular language. *Wilkins,* 48 S.W.3d at 152; *Bryant v. Genco Stamping & Mfg. Co.,* 33 S.W.3d 761, 765 (Tenn. 2000).

▪ The term "wage" is also used in determining the maximum award of permanent partial disability benefits available to an employee, like Powell, who suffers an injury to the body as a whole. Tenn.Code Ann. § 50–6–241. Based upon our reasoning in *Wilkins,* we must conclude that the term "wage" in § 50–6–241 does not mean "average weekly wage." Instead, the wage of an employee who is compensated on an hourly basis is the employee's hourly rate of pay.

▪ Our inquiry, however, does not end here. We must also consider whether Powell's return to work constituted a meaningful one. In making this determination, we must assess "the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work." *Nelson,* 8 S.W.3d at 630 (quoting *Newton,* 914 S.W.2d at 886). If the employer's offer to return the employee to work is not reasonable in light of the circumstances of the employee's physical ability to perform the offered employment, the offer is not meaningful. *Id.* On the other hand, an employee who unreasonably refuses an offer to return to work will be limited to a disability rating of two and one-half times the medical impairment rating. *Id.*

Blalock submits that the two-and-one-half-times cap should apply because Powell unreasonably reduced his working hours at Blalock to supervise construction at Powell's own general contracting business. Although Powell's wife testified that he was working four hours every evening and additional hours on weekends at his personal business, Powell specifically refuted this testimony. Powell testified that he did little actual work for his construction business after sustaining his injury and that he received no profit from the work he performed there. In fact, Powell estimated that after his injury he had reduced the number of hours he worked on his side business by approximately ninety-five percent. Powell's father corroborated his son's testimony, stating that Powell only occasionally checks on his construction workers' progress in the evening. The trial court heard and saw the witnesses who testified and was in the best position to determine the reasonableness of Powell's reduction in working hours. *Raines v. Shelby Williams Indus., Inc.,* 814 S.W.2d 346, 349 (Tenn.1991) ("Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be

accorded to those circumstances."). We disagree with the dissent's attempt to re-weigh the credibility of the witnesses' testimony on the cold record in this case. In short, the evidence preponderates in favor of Powell's assertion that he reduced his working hours due to pain associated with his injury.

Given the circumstances in this case, we cannot conclude that Powell's decision to work four-days a week was an unreasonable refusal to return to work. We, therefore, hold that the evidence does not preponderate against the trial court's ruling that Powell's return to a four-day week was not a meaningful return to work. *See Mannery v. Wal–Mart Distrib. Ctr.*, 69 S.W.3d 193, 196 (Tenn.2002) (standard of review in a workers' compensation case is de novo upon the record, accompanied by a presumption of correctness of the trial court's findings unless the evidence preponderates against those findings). This holding, however, does not preclude a finding of a meaningful return to work in every case in which an employee maintains fewer work hours post-injury than were maintained pre-injury.

## CONCLUSION

■ We hold that the term "wage" in Tenn.Code Ann. § 50–6–241(a)(1) means the hourly rate of pay for an employee who is compensated on an hourly basis. The statutory cap under § 50–6–241(a)(1) does not apply, however, unless the employee's return to work is a meaningful return. We hold that the evidence does not preponderate against the trial court's finding that Powell's return to a four-day work week was not a meaningful return to work. We therefore affirm the trial court's award of benefits in this case. Costs of this appeal are taxed to the appellants, Blalock Plumbing, Electric & HVAC,

Inc. and Federated Insurance Company, for which execution may issue if necessary.

ADOLPHO A. BIRCH, JR., J, concurring and dissenting.

ADOLPHO A. BIRCH, JR., J., concurring in results only.

I agree with the result reached in this case by the majority. I write separately, however, to express my disagreement with the reasoning the majority employs. My problem is with the reliance on *Wilkins v. The Kellogg Co.*, 48 S.W.3d 148 (Tenn. 2001), as the analytical basis for holding that "wage" should be defined to mean "hourly rate of pay." I would hold, as I expressed in *Wilkins*, that "wage" should involve a weekly, rather than hourly, basis for calculating pay. *Id.* at 156 (Birch, J., dissenting). Defining "wage" to mean "hourly rate of pay" is problematic "because hourly rate of pay, unlike average weekly wage, is not a reliable indicator of the economic impact of a workplace injury."

The employee in this case returned to work at the same hourly rate of pay, but his injury caused him to work fewer hours and earn less money on a weekly basis. Clearly, his injury has had an economic impact regardless of his hourly rate of pay, and it is only logical to allow greater compensation to offset that impact. As a result, it would be unnecessary to employ the "reasonableness" analysis used by the majority—an analysis which, notably, appears nowhere in the elements of the statute. *Compare Wilkins*, 48 S.W.3d at 154 (criticizing the dissent as being at odds with "the statute's express terms").

Consequently, I concur in the result reached by the majority, but not in the analysis. Additionally, I would encourage the General Assembly to consider the adoption of a terminology that could be applied by this Court in a manner more

congruent with the intended purposes of the Workers' Compensation Act.

WILLIAM M. BARKER, J, dissenting.

FRANK F. DROWOTA, III, C.J., not participating.

WILLIAM M. BARKER, dissenting.

In this permanent partial disability case, the essential issue is whether the employee is limited to an award of two and one-half times his medical impairment rating under Tennessee Code Annotated section 50–6–241(a)(1), or whether the trial court was correct to award the employee four times his impairment rating under section 50–6–241(b). Both the majority and concurring opinions in this case ultimately find that the employee is entitled to receive the benefit of the greater multiplier, though each employs different reasoning. I respectfully disagree with both positions, and for the reasons given below, I would hold that the employee here is properly limited to an award of two and one-half times his medical impairment rating under section 50–6–241(a).

As prior case law interpreting section 50–6–241(a) holds, an employee who suffers from a permanent partial disability is limited to an award of two and one-half times his medical impairment rating when the employee (1) returns to work at "a wage equal to or greater than the wage the employee was receiving at the time of injury," and (2) otherwise experiences a "meaningful return to work." *See Advo, Inc. v. Phillips*, 989 S.W.2d 693, 696 (Tenn.Workers Comp.Panel 1998) (holding that section 50–6–241(a) applies when the employee "has made a meaningful return to work and is earning a wage equal to or greater than that earned before the injury"); *Newton v. Scott Health Care Ctr.*, 914 S.W.2d 884, 886 (Tenn.Workers Comp.Panel 1995). If either one of these

factors is not established, then the trial court may award the employee up to six times the impairment rating under section 50–6–241(b). *See Nelson v. Wal–Mart Stores, Inc.*, 8 S.W.3d 625, 630 (Tenn.1999).

With respect to the first factor examining the employee's "wage," the majority and the concurring opinion disagree as to the proper definition of that term as it is used in section 50–6–241(a). The concurring opinion opines that an employee's "wage" under this statute "should be calculated on a weekly scale," whereas the majority, citing *Wilkins v. The Kellogg Co.*, 48 S.W.3d 148 (Tenn.2001), holds that the term means "the employee's hourly rate of pay." The *Wilkins* decision was not a unanimous opinion of this Court, and I joined Justice Birch in dissenting in that case. I did so because I believed then, as I do now, that when the term "wage" is applied to classifications of partial disability, it must mean something more than one's hourly rate of pay. As Justice Birch related in his dissent in *Wilkins*, and again in this case, the majority's interpretation of this term plainly fails to account for the employee's actual economic loss suffered by the compensable injury. Because the legislature intended the workers' compensation statutes to help "reimburse employees for the financial consequences of workplace injuries," *Wilkins*, 48 S.W.3d at 156 (Birch, J., dissenting), I would conclude that the General Assembly did not intend that "wage" be defined here as merely the employee's "hourly rate of pay."

However, though my view of what the law *should be* is contrary to the majority' formulation today, I cannot ignore what the law *is* on this appeal. I continue to believe that *Wilkins* was wrongly decided, but I also recognize that a majority of this Court remains presently content to retain that holding. To be clear, I welcome the opportunity to reexamine *Wilkins* either

when we are asked by the parties specifically to do so or when we bear witness to expressions of legislative disapproval with that decision.[1] Nevertheless, because neither of these circumstances is present here, I reluctantly agree with the majority—with regard to this case alone—that the employee returned to work "at a wage equal to or greater than the wage the employee was receiving at the time of injury." Tenn.Code Ann. § 50–6–241(a).

I cannot agree, however, with the majority's conclusion as to the second factor of the test under section 50–6–241, *i.e.*, that the employee has failed to make a "meaningful return to work." This phrase does not appear in the language of the statute, and this Court has been unable to define its core concepts, other than to declare the phrase denotes what is reasonable under the circumstances. *See, e.g., Nelson,* 8 S.W.3d at 630. To this end, we are supposed to make an assessment of two factors: (1) the reasonableness of the *employer's* actions in attempting to return the employee to work; and (2) the reasonableness of the *employee's* actions in not returning to work. *See Newton,* 914 S.W.2d at 886. Under my examination of these factors, I conclude that the employee in this case made a meaningful return to work.

The majority does not dispute that the employer exercised reasonable efforts in attempting to return the employee to work. In fact, I believe that its efforts could even be characterized as laudable. The record shows that the employer offered to retain Mr. Powell in the same position with the same duties; permitted him to work at his own pace and subject to his medical restrictions; paid him the same hourly wage of $14.00/hour; provided him with the same level and types of benefits; and allowed him to work a reduced work schedule. Although the employee testified that he could perform only some of his regular job functions without difficulty, the record does not show that these facts were regarded by the employer as especially important or that they otherwise diminished Mr. Powell's value as an employee. Indeed, given that the employer was continuing to employ him with the same benefits and hourly wages as before his injury, just the opposite conclusion may be inferred.

The majority goes on to conclude, however, that section 50–6–241(b) applies here because the employee acted reasonably in not returning to full-time employment. As support for this conclusion, the majority relies principally upon the employee's testimony that he was unable to work full time due to the pain from his compensable injury. Despite the fact that the employee was able to work four full days a week prior to the trial, the majority accepts as reasonable that the employee was simply unable to work that extra fifth day for his employer. I respectfully disagree.

Any employee who returns to work at essentially the same position, at the same wage, and at eighty percent of his or her pre-injury hours has, in my opinion, made a meaningful return to work as a matter of law. The majority's conclusion that the employee must return to work for *the same number of hours* before he or she makes a meaningful return to work is not supported by any language in section section 50–6–241(a). Indeed, such a rule is overly burdensome in that it subjects an employer to paying greater benefits simply because, all other things being equal, the employee refuses to work 100% of his or her pre-injury hours.

---

**1.** In this case, the parties do not cite to *Wilkins* in their briefs, and they largely focus on the issue of whether the employee experienced a meaningful return to work.

Although the number of hours worked is relevant to any analysis of whether an employee's refusal to work is reasonable, an employee working thirty-two of forty hours a week is more than capable of having a meaningful return to work depending upon the other circumstances of the case. In this case, the employee was paid the same wage and was employed in essentially the same position. I find no other circumstances in this case which suggest that the employee here "reasonably" refused to work an additional eight hours a week for the defendant.

To the contrary, the preponderance of the evidence shows that the employee did not scale back his employment due to any pain from his work-related injury. Instead, it appears that he has cut back on his hours with the defendant to accommodate his own housing construction business. Both the employee and his wife testified at trial that after he finishes working for the defendant during the day, he goes directly to work with his own construction business, performing many of the same light-duty functions that he does with the defendant.[2] Indeed, though contradicted by the employee, his wife, who is a partner in this construction business, testified specifically that her husband works *four* additional hours every evening with his business and that he spends additional time on the weekends doing the same work.

The majority relies heavily on the fact that the employee stated that he did not work much in the evenings with his own construction firm. Even if the actual number of hours were relevant to the analysis, this "fact" is seemingly contradicted by the employee himself, who testified that he normally worked, depending on the day, as much as two hours or as little as thirty minutes. Indeed, he even testified that in the weeks preceding the trial, he worked "a couple more *hours* than normal." (emphasis added).

However, the actual number of hours that Mr. Powell worked on his own job site is not relevant to the analysis. What *is* relevant is that Mr. Powell is *able to work* on his own job site after a full eight hours with the defendant, thereby providing powerful, if not conclusive, evidence that he *could* work more hours with the defendant if he chose to do so. After all, an additional two hours here or two hours there brings this employee ever closer to the full-time talisman of forty hours that the majority now seems to require before finding a meaningful return to work.

Plainly stated, this is not a case in which the employee, so overcome with pain and exhaustion from a work-related injury, struggles home each night to heal from a hard day's labor. Nor is this a case in which the employee needs a little additional time away from work to quietly convalesce in the comfort of familiar surroundings. Rather, this appears to be a case in which the employee has sought to use the occurrence of a past work-related injury to subsidize his own business endeavors. By finding that this employee "cannot" work a full forty hours in a week, we have given him our blessing to spend this additional time with his own construction firm, to be paid, in part, by his employer bearing the additional burden of a four-times multiplier under section 50–6–241(b). I cannot agree that this result reached by the majority today is appropriate under the statutes.

2. Mr. Powell testified that we works for the defendant from 7:00 a.m. to 3:30 p.m. Although he disputed the testimony of his wife on how much he actually works at his other job, he testified that when he goes, he usually arrives at 4:00 p.m.

Given the additional time to which this employee dutifully devotes his own construction business, he is clearly able, without limitation from pain, to work an additional eight hours a week for the defendant. Unlike the majority today, I would not conclude that an employee "reasonably" fails to work when he or she has a demonstrated ability to work, but simply chooses not to do so. In my view, therefore, the weight of the evidence clearly supports a finding that the employee's failure to work an additional eight hours a week with the defendant was due to factors other than pain from a compensable injury. Accordingly, I would find that the employee has made a meaningful return to work at the same "wage," thereby invoking the two and one-half times multiplier in Tennessee Code Annotated section 50–6–241(a).

For these reasons, I respectfully dissent.